# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICHOLAS WEBB, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 16-cv-04664 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| FINANCIAL INDUSTRY REGULATORY ) | |
| AUTHORITY, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Nicholas Webb and Thad Beversdorf agreed to use Defendant Financial Industry Regulatory Authority ("FINRA") to arbitrate a dispute with their former employer. Plaintiffs' contract with FINRA included a promise that the arbitration would achieve fair, just, and equitable results. Plaintiffs now claim that FINRA failed to fulfill this promise—and thus breached the contract—by failing to provide its arbitrators with requisite sources of authority, by not properly training the arbitrators, and by not having certain procedural mechanisms in place to accomplish a just and equitable arbitration. Before this Court is FINRA's motion to dismiss the complaint. (Dkt. No. 9.) FINRA argues, first, that Plaintiffs' claim is barred by the doctrine of arbitral immunity; second, that Plaintiffs were required to exhaust their administrative remedies prior to filing suit yet failed to do so; and third, that FINRA is not a proper party to this suit and Plaintiffs have failed to name an indispensable party. Because the Court agrees that FINRA is entitled to arbitral immunity, FINRA's motion to dismiss is granted without need to reach the other arguments.

## BACKGROUND

Plaintiffs went to work for Jeffries & Company, Inc. ("Jeffries"), a financial services firm, in June 2012. (Compl. ¶¶ 11–13, Dkt. No. 1-1.) Their employment contracts with Jeffries each contained the same arbitration provision referencing FINRA. (*Id*. ¶ 14.) That arbitration provision required any arbitration proceeding with respect to Plaintiffs' employment or their employment agreements to be brought before FINRA. (*Id.* ¶ 15.) In November 2012, Plaintiffs entered into a contract with FINRA to arbitrate disputes with Jeffries ("Arbitration Submission Agreement"). (*Id*. ¶ 25.) The Arbitration Submission Agreement provides that claims are to be submitted in accordance with FINRA By-Laws, Rules, and Code of Arbitration Procedure and also incorporates promises to enforce and promote just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices. (*Id*. ¶¶ 30, 33.)

Jeffries fired Plaintiffs for "poor performance" in October 2013. (*Id.* ¶ 22) Plaintiffs then immediately began to prepare claims against their former employer alleging breach of contract, retaliation, violations of wage and hour statutes, and fraudulent conduct. (*Id*. ¶¶ 21–24.) Upon submission of Plaintiffs' claims against Jeffries, FINRA applied the Code of Arbitration Procedure for Industry Disputes ("FINRA rules"). (*Id*. ¶ 35.) It is unclear what exactly went wrong during the arbitration proceedings, but Plaintiffs ultimately "were forced to withdraw their claims." (*Id.* ¶ 38.) Plaintiffs now allege that FINRA breached the Arbitration Submission Agreement in at least the following ways:

   a. by failing to provide the requisite sources of authority to its arbitrators to facilitate a just and equitable resolution of the pending disputes;
   b. by failing to provide arbitrators the appropriate procedural mechanisms and safeguards to fulfill FINRA's contractual promises;
   c. by failing to provide its arbitrators with procedural mechanisms to certify and authorize the exchange of information between the parties to a dispute;

>   d.  by failing to properly train its arbitrators;
>
>   e.  by interfering in its arbitrators' exercise of their discretion and imposing interpretations of its Rules that are contrary to the facilitation of a just and equitable resolution of disputes submitted to FINRA; and,
>
>   d.  by failing to provide arbitrators with the necessary authority to enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices.

(*Id.* ¶ 36.)

After Plaintiffs withdrew their claims from arbitration, they sued FINRA in the Circuit Court of Cook County, Illinois. Plaintiffs' complaint asks for monetary damages for the alleged breach of contract (Count I) and requests a declaratory judgement that FINRA rules are unable "to enforce and promote just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices" and "to create fair, just, and equitable results for disputes to be decided on their merits" (Count II). (*Id.* ¶ 50(a).) FINRA subsequently removed the case to this Court.[1]

## DISCUSSION

To survive motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting

---

[1] This Court has subject-matter jurisdiction over this case based on diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiffs are residents of Illinois while FINRA is a Delaware corporation with its principal place of business in Washington, D.C. (Notice of Removal ¶ 10, Dkt. No. 1.) Although the Complaint is unclear as to the amount of damages being sought, the Court accepts representations made by Plaintiffs' counsel during the June 7, 2017 status hearing that the amount in controversy exceeds $75,000 (without reliance on the amount at issue in the underlying arbitration). It is questionable whether this Court also has federal question jurisdiction as suggested in the Notice of Removal, but there is no need for the Court to resolve that issue as the basis for diversity jurisdiction is sound.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And in analyzing a Rule 12(b)(6) motion, the Court "must construe [the complaint] in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (internal citations omitted).

FINRA argues that it is immune from liability for the claims asserted by Plaintiffs here due to the doctrine of arbitral immunity. Arbitrators have immunity from suit analogous to judicial immunity because they perform quasi-judicial functions. *See Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977) (citing *Cahn v. Int'l Ladies' Garment Union*, 311 F.2d 113, 114–15 (3d Cir. 1962) (per curiam)). Although the Seventh Circuit has not yet fully articulated the outer limits of arbitral immunity, the case law suggests that the immunity attaches to acts taken within the scope of the arbitral process. *See, e.g., Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 843 (7th Cir. 2002) (summarizing decisions from other courts). And it extends to cases where an arbitrator's authority to resolve a dispute is challenged. *Id*. The immunity also protects organizations sponsoring arbitrations against claims based on administrative tasks they perform that are "integrally related" to arbitration. *See, e.g., id.* at 844. The doctrine of arbitral immunity recognizes that "arbitrators have no interest in the outcome of the matter, and thus should not be compelled to become parties to the dispute." *Id.* (citing *Tamari*, 552 F.2d at 781). Suing arbitrators is "comparable to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit"—"[s]uch a suit would place an unfair burden on jurors and would discourage others from jury service." *Id.*

In *Caudle v. American Arbitration Association*, 230 F.3d 920 (7th Cir. 2000), the Seventh Circuit questioned whether the doctrine of arbitral immunity was "properly understood as an 'immunity' rather than a conclusion that arbitrators and organizing bodies are not the real parties

4

in interest." *Id.* at 922; *see also Int'l Med. Grp., Inc.*, 312 F.3d at 844 (discussing *Caudle*). In many cases, a suit against an arbitrator or an organization sponsoring arbitration is not necessary for a litigant to obtain relief. *See, e.g., Int'l Med. Grp., Inc.*, 312 F.3d at 844; *Tamari*, 552 F.2d at 781. But under certain circumstances, such a suit might be proper. For example, the Seventh Circuit hypothesized in *Caudle* that if the plaintiffs paid the entire amount requested by a sponsoring organization to conduct an arbitration form them and the organization then pocketed the money without arbitrating the dispute, the organization might be held liable. *Caudle*, 230 F.3d at 922; *see also Int'l Med. Grp.*, 312 F.3d at 844.

Importantly, however, *Caudle* did not actually hold that such a suit would necessarily proceed—the scenario was only proposed by the court as a hypothetical situation.[2] *Caudle*, 230 F.3d at 922. Moreover, *Caudle* does not suggest that plaintiffs can avoid arbitral immunity by simply re-framing a complaint about the handling of their arbitration proceedings as a breach of contract dispute with the sponsoring organization. As the Seventh Circuit has explained, "[i]n the *Caudle* hypothetical, the facts giving rise to the potential claim have nothing to do with arbitrability or with the administrative duties of the [sponsoring organization]. The claim that one may not retain a payment for services that are never rendered can be stated entirely without reference to the arbitration." *Int'l Med. Grp., Inc.*, 312 F.3d at 844. In contrast, where the claim is "integrally related to the administrative tasks" of the sponsoring organization (*e.g.*, where a suit is based on a wrongful exercise of jurisdiction by the organization), the immunity applies. *Id.* (citing *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999)

---

[2] The plaintiff in *Caudle* sued the sponsoring organization for breach of contract, alleging that the organization charged unreasonably high fees for arbitration. The district court dismissed the suit, finding that the organization was immune. But on appeal, the Seventh Circuit declined to decide whether arbitral immunity applied, instead determining that there was no subject-matter jurisdiction. *Caudle*, 230 F.3d at 922–23; *see also Int'l Med. Grp., Inc.,* 312 F.3d at 844 (discussing *Caudle*).

(stating that "[a] sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration")).

Plaintiffs in this case do not cite any legal authority to support their argument that arbitral immunity does not apply to their claims against FINRA. Instead, they attempt to distinguish cases cited by FINRA on two grounds.

First, Plaintiffs argue that arbitral immunity does not apply because their suit is simply a contract dispute. They do not pinpoint exactly why this characterization should make a difference, instead pointing out that the *International Medical Group* and *Tamari* cases cited by FINRA deal with challenges to the jurisdiction of an arbitral body while no such challenge has been brought here. But although *International Medical Group* and *Tamari* arose out of different circumstances than those here, the cases are instructive on the difference between situations when arbitral immunity applies (*e.g.*, when a claim is "integrally related" to the administrative tasks of a sponsoring organization) and when it does not (*e.g.*, when a claim can be stated entirely without reference to the arbitration). *See Int'l Med. Grp., Inc.*, 312 F.3d at 844. And the fact that the present complaint raises no challenge to FINRA's jurisdiction does not mean that it has nothing to do with FINRA's administrative duties and can be resolved without reference to the arbitration.

To the contrary, Plaintiffs themselves admit that the crux of their complaint is that FINRA "has not given the arbitrators or administrators the 'toolbox' needed . . . '[t]o promote and enforce just and equitable principles of trade and business.'" (Pls.' Resp. at 10–11, Dk. No. 23.) Hence, although Plaintiffs have framed their complaint carefully in an attempt to avoid the immunity issue, what they really ask this Court to do is to drag FINRA into their employment dispute based on FINRA's performance of tasks integrally related to the underlying arbitration. Plaintiffs are not asking this Court to decide an issue outside of the arbitration process; they desire for this Court to

second-guess how FINRA administers disputes. This is exactly what *Tamari* and *International Medical Group* warned against—allowing dissatisfied litigants to sue someone based on the performance of duties analogous to those of a jury or a court clerk. *See Tamari*, 552 F.2d at 781; *see also Int'l Med. Grp., Inc.*, 312 F.3d at 844. Allowing such a suit would place an unfair burden on FINRA and would discourage arbitrations. Hence, the present case is quite different from the *Caudle* hypothetical and more in line with *Tamari* and *International Medical Group*.

Second, Plaintiffs attack a number of the cases cited by FINRA where courts have extended arbitral immunity to cover the administration of sponsoring organizations. According to Plaintiffs, those cases challenge the performance of arbitrators while the present case concerns FINRA's failure to provide their arbitrators with a proper "toolbox" to comply with contractual terms. But this argument overlooks the broader teachings of the cases cited by FINRA. For example, in *Honn v. NASD, Inc.*, 182 F.3d 1014 (8th Cir. 1999), the claims against a sponsoring organization arose out of its alleged misconduct in selecting or allowing certain witnesses to testify at the arbitration, in forwarding materials to the arbitrators, and in formulating and delivering responses to subpoenas. *Id.* at 1017. The plaintiff alleged that arbitral immunity did not apply because the misconduct was committed by the "non-arbitration arm" of the organization and was outside of the organization's arbitration-sponsoring role. *Id.* The *Honn* court held that arbitral immunity extended to organizations sponsoring arbitrations and that the organization in that case "was performing functions that were necessary to arbitration administration at the time of the alleged wrongdoing, and therefore [its] acts were within the scope of the arbitral process." *Id.* at 1017–18. Thus, even if the organization carried out those functions improperly, it was "protected by arbitral immunity because the acts upon which [Plaintiff's] claims are based were taken while [the organization] was carrying out its normal administrative functions." *Id*. at 1018.

7

Similarly, in the present case, FINRA was carrying out its normal administrative functions in support of an arbitration at the time of the alleged "breach contract." As in *Honn*, arbitral immunity applies.

In *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1208 (6th Cir. 1982), the plaintiff challenged the composition of an arbitration panel and alleged that procedural irregularities prevented him from submitting evidence and caused hearings to be postponed. *Id.* at 1208. In affirming the district court's grant of summary judgment in favor of the defendant, the court explained that "[e]xtension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusionary." *Id.* at 1211. The court further concluded that "[i]t would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association." *Id.* But this is precisely what Plaintiffs would like to do here—to shift liability to FINRA by stating that their case is not about the performance of arbitrators or administrators, but is rather about the FINRA's failure to provide arbitrators and administrators with the "toolbox."

In short, despite Plaintiffs' protestations to the contrary, arbitral immunity applies in this case. As a result, Plaintiffs' claims for breach of contract against FINRA are dismissed with prejudice.

## CONCLUSION

For the reasons stated above, FINRA's motion to dismiss (Dkt. No. 9) is granted on the ground that FINRA is immune from suit. All claims are dismissed with prejudice.

Date: July 5, 2017

Andrea R. Wood
United States District Judge